# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**BODY BY COOK et al.**                                    **CIVIL ACTION**

**VERSUS**                                                 **NO. 13-175**

**INGERSOLL-RAND COMPANY**                                 **SECTION: "G"(5)**

## ORDER AND REASONS

In this litigation, Plaintiffs, an automotive repair business and its owner, assert that Defendant negligently installed an automotive paint system. Before the Court is Defendant's "Renewed Motion for Judgment as a Matter of Law, or in the Alternative, Motion for a New Trial."[1] After considering the motion, the memorandum in support,[2] the memorandum in opposition,[3] the record, and the applicable law, the Court will deny the motion.

## I. Background

Plaintiffs in this matter are Body by Cook, Inc., a Louisiana company involved in the automotive repair business, and Robert Cook, a Louisiana citizen and the president and owner of Body by Cook, Inc.[4] On January 30, 2013, Plaintiffs filed suit against Defendant Ingersoll-Rand Company, a foreign corporation, invoking this Court's diversity jurisdiction.[5] In their complaint,

---

[1] Rec. Doc. 87.

[2] Rec. Doc. 87-1.

[3] Rec. Doc. 89.

[4] Rec. Doc. 1.

[5] *Id.*

Plaintiffs assert that they suffered damages due to Defendant's negligent installation of an air compressor-painting system in August, 2000.[6]

On November 5, 2013, Defendant filed a "Motion for Partial Summary Judgment," arguing that Plaintiffs' negligence claim had prescribed.[7] The Court denied Defendant's "Motion for Partial Summary Judgment" on December 4, 2013.[8]

A jury trial on the merits was held from January 13, 2014 to January 15, 2014.[9] On January 14, 2014, at the close of Plaintiffs' case, Defendant orally raised a motion for judgment as a matter of law on the ground that Plaintiffs' negligence claim had prescribed and that Plaintiff's claim was not saved pursuant to either *contra non valentum* or the continuing tort doctrine. The Court denied Defendant's motion as to *contra non valentum* but granted its motion as to the continuing tort doctrine.

On January 15, 2014, the Court submitted the question of whether Plaintiffs' claim had prescribed to the jury. The jury interrogatory read:

> (7)    Do you find by a preponderance of the evidence that Robert Cook had actual or constructive knowledge of facts indicating that he was a victim of negligence more than one year before he filed suit on January 30, 2013?[10]

Later that day, a jury rendered a verdict, finding: that Plaintiffs were 40% at fault and Defendant was 60% at fault; that the total damages were $375,000; and that Robert Cook did not have actual or constructive knowledge of facts indicating that he was a victim of negligence more than one year

---

[6]  *Id.*

[7]  Rec. Doc. 22.

[8]  Rec. Doc. 43.

[9]  Rec. Doc. 71; Rec. Doc. 72; Rec. Doc. 73.

[10]  Rec. Doc. 73-2 at p. 2.

before he filed suit on January 30, 2013.[11] On February 5, 2014, the Court entered judgment in favor of Plaintiffs in the amount of $225,000, together with all costs of court and judicial interest from the day of demand until paid.[12]

On March 5, 2014, Defendant filed the pending "Renewed Motion for Judgment as a Matter of Law, or in the Alternative, Motion for a New Trial."[13] Plaintiff filed a memorandum in opposition on April 8, 2014.[14]

## II. Parties' Arguments

### A.     Defendant's Arguments in Support

Defendant requests that the Court grant its renewed motion for judgment as a matter of law, arguing that the question of whether a cause of action has prescribed is a question of law that is to be decided by the judge.[15] Defendant specifically asserts that "Louisiana Courts have long held that issues of prescription are questions of law to be determined by a judge" and that "Louisiana case law has also made it clear that statutes and code articles are to be applied and interpreted as questions of law."[16] For the proposition that the issue of prescription is a question of law, Defendant cites the Fifth Circuit's opinions in *McGee v. State Farm Fire & Cas. Co.*[17] and *R.J. Reynolds Tobacco Co.*

---

[11]  *Id.* at pp. 1–2.

[12]  Rec. Doc. 86.

[13]  Rec. Doc. 87.

[14]  Rec. Doc. 89.

[15]  Rec. Doc. 87-1 at 13.

[16]  *Id.*

[17]  515 F. App'x 291, 292 (5th Cir. 2013).

3

*v. Hudson,*[18] an Eastern District of Louisiana order in *Bourdais v. City of New Orleans*,[19] and the First Circuit Court of Appeal of Louisiana's opinion in *McKenzie v. Imperial Fire & Cas. Ins. Co*.[20] For the proposition that the interpretation and application of statutes and code articles is a question of law, Defendant cites the First Circuit Court of Appeal of Louisiana's opinions in *McKenzie* and *Gilmore v. Whited.*[21] According to Defendant, in "*R.J. Reynolds Tobacco Company v. Hudson*, the United States Fifth Circuit held that the defendant's appeal as to its denied prescription summary judgment was proper because issues of prescription, specifically when they begin to run, '[present] serious question[s] of law.'"[22] "For the same reasons," Defendant maintains, "the Louisiana Eastern District similarly granted defendant's immediate interlocutory appeal on the issue of prescription" in *Bourdais v. City of New Orleans*.[23]

Defendant next points out that the Court, in granting Defendant's motion for judgment as a matter of law on the issue of continuing tort, evaluated the same set of facts as are to be evaluated in deciding *contra non valentem*. According to Defendant, "the facts upon which the Plaintiffs' claim of continuing tort was decided are inextricably linked to the Plaintiffs [sic] reliance on the contra non valentem exception to prescription."[24] Defendant maintains that

---

[18]  314 F.2d 776 (5th Cir. 1963).

[19]  Case No. 99-1434, 2002 WL 1963320 (E.D. La. Aug. 22, 2002) (Livaudais, J.).

[20]  12-1648 (La. App. 1 Cir. 2013), 122 So.3d 42, 46.

[21]  08-1808 (La. App. Cir. 1 2009), 9 So.3d 296.

[22]  Rec. Doc. 87-1 at pp. 3–4 (no citation provided).

[23]  *Id.* at 4.

[24]  *Id.*

> [b]ecause the facts weighed by this Court when determining that no continuing tort existed are the same facts your Honor must analyze when determining whether the doctrine of contra non valentem was applicable. [sic] Defendant submits that the Court, not the jury, should have also decided whether Plaintiffs' [sic] had actual or constructive knowledge of a potential claim against Defendant, and whether Plaintiffs' claims were barred by prescription.[25]

"Thus," according to Defendant, "the ultimate determination as to whether Plaintiff's claims are barred by prescription is a question of law that must be decided by this Honorable Court."[26]

Moreover, Defendant contends that "all of the evidence offered by the Plaintiffs, including the testimony of Robert Cook, indicates that they actually discovered the facts upon which their cause of action is based more [sic] in October 2000, almost thirteen years before they brought suit."[27] "As a result," Defendant asserts that "Plaintiffs' action does not fall under an exception to prescription and their reliance on the doctrine of contra non valentem is inappropriate."[28] According to Defendant, Plaintiffs had "actual knowledge of an injury sufficient to begin the running of prescription beginning in 2000 and continuing through 2011."[29]

After detailing the evidence that Defendant asserts shows that Robert Cook had constructive knowledge, Defendant alleges that "[i]nstead of offering legally sufficient evidence to establish that their claims were not barred by the running of prescription, Plaintiffs continually attempted to confuse the jury in an attempt to hide the fact that Mr. Cook's own testimony evidences the Plaintiffs' actual knowledge of a potential claim against Ingersoll Rand more than one year prior to

---

[25] *Id.*

[26] *Id.* at 5.

[27] *Id.* at 6.

[28] *Id.*

[29] *Id.* at 7.

the filing of the instant lawsuit."[30] Defendant further asserts that "Plaintiffs attempt to rely on the doctrine of contra non valentem should not have been allowed. This doctrine is applicable only when there were certain actions or conditions that might prevent a potential plaintiff from having actual knowledge of a potential claim."[31]

Additionally, Defendant argues that *contra non valentem* "cannot be used to negate the presence of actual knowledge."[32] However, Defendant asserts that "[t]he facts as established in the Pre-Trial Order and at the Trial on the Merits establish that Mr. Cook had actual knowledge of a potential claim against Ingersoll Rand."[33] Defendant continues that "Plaintiffs were allowed to use the doctrine of contra non valentem to negate those facts, by arguing that Mr. Cook did not know the specific cause of a potential claim."[34] Without citing case law for support, Defendant states that "[s]uch use of the contra non valentem exception is inappropriate and should not be allowed."[35] Defendant concludes that it "is entitled to judgment as a matter of law on the issue of prescription based on the fact that the Plaintiffs failed to establish a legally sufficient evidentiary basis that their claim was not barred by prescription."[36]

---

[30] *Id.* at 9–10.

[31] *Id.* at 10.

[32] *Id.*

[33] *Id.*

[34] *Id.*

[35] *Id.*

[36] *Id.*

Regarding Defendant's motion in the alternative for a new trial, Defendant maintains that it is entitled to a new trial for the same reasons that entitle it to judgment as a matter of law.[37] Additionally, Defendant argues that it is entitled to a new trial regarding the amount of damages the jury awarded to Plaintiffs.[38] According to Defendant, "Plaintiffs failed to establish a legally sufficient evidentiary basis that they were entitled to the amount of damages awarded by the jury."[39]

## B.    Plaintiffs' Arguments in Opposition

In response to Defendant's arguments, Plaintiffs argue that *Alexander v. Fulco*,[40] a case that Defendant cites in its memorandum in describing the doctrine of *contra non valentem*, is "factually distinguishable from the case at bar."[41] According to Plaintiffs, in *Alexander*, the plaintiffs "had been notified by a law firm, in early January, 2002, that they may have been exposed to silica at their job, as far back as 1954," and "[t]he plaintiffs did not file suit until January 31, 2003."[42] According to Plaintiffs, the appellate court in *Alexander* "upheld the trial court's dismissal of the case and reasoned that the plaintiffs were put on notice that they may have been the victims of a tort more than one year prior to filing suit."[43] Here, however, Plaintiffs argue that "Mr. Cook testified that he had no idea whatsoever that he had been a victim of a tort until he was told by [outside consultants]

---

[37]  *Id.* at 11.

[38]  *Id.*

[39]  *Id.*

[40]  39,293 (La. App. 2 Cir. 2/25/05), 895 So. 2d 668.

[41]  Rec. Doc. 89 at 8.

[42]  *Id.*

[43]  *Id.*

[Jorge] Santana and [Jeffrey] McCants [in early 2012]."[44] Plaintiffs also assert that Cook "testified that he knew something was wrong, but he had no idea that the source of the problems was the result of Ingersoll's negligence."[45] Finally, Plaintiffs assert that Cook "testified that it had never occurred to him that Ingersoll would not follow its own installation guidelines and then fail to correct it for years, although it had numerous opportunities to inform him and repair the system."[46]

Plaintiffs assert that there was sufficient evidence to support two of the four categories of *contra non valentem*. Plaintiffs argue that the evidence was sufficient to show that the case fell within the third category of *contra non valentem*, which is when "the debtor himself has done some act effectually to prevent the creditor from availing himself of his cause of action."[47] Plaintiff also maintains that the evidence was sufficient to show that the case falls within the fourth category of *contra non valentem*, which applies when "the cause of action is not known or reasonably knowable by the plaintiff, even though this ignorance is not induced by the defendant."[48] Plaintiffs maintain that:

> The evidence at trial showed that Mr. Cook depended upon Ingersoll to do his installations and repairs. He purchased a brand new system from them and had every right to expect that defendant would install it properly. Of course, he expected them to inform him if something was wrong with the system, especially when they serviced it regularly and even installed the new equipment. Mr. Cook testified that he did not even suspect that Ingersoll had caused the problems. Ingersoll holds itself out as an expert in the field, manufacturing and installing the very best equipment. Mr. Cook further testified that when he was informed by a vendor that Ingersoll was

---

[44] *Id.*

[45] *Id.* at 8–9.

[46] *Id.* at 9.

[47] *Id.*

[48] *Id.*

at fault, he took action immediately. Then, he filed suit within a year from his discovery that he had been the victim of a tort. With this testimony and the other evidence at trial, there was enough proof of a factual issue for the jury to decide.[49]

Specifically regarding Defendant's contention that Cook had actual knowledge that he was a victim of Defendant's negligence, Plaintiffs assert that Cook testified at trial that he did not have this knowledge.[50] Plaintiffs argue on this basis that there was a factual dispute and that "[t]hese competing sets of facts were part of the issues correctly submitted to the jury for determination."[51]

With respect to Defendant's alternative motion for a new trial, Plaintiffs argue that a new trial is only granted when the jury verdict is against the great weight of the evidence, and assert that "[Defendant's] motion is woefully inadequate when it comes to the prescription issue."[52] Plaintiffs further contend that "Ingersoll makes no attempt to compare the competing evidence on prescription nor even attempt to 'weigh' the evidence, much less any substantively argue [sic] that it is against the 'greater weight of the evidence.'"[53]

Plaintiffs also argue that under the great weight of the evidence standard, the evidence was sufficient to let the jury's finding regarding damages stand, especially after considering Cook's testimony on this issue.[54]

---

[49] *Id.* at 9–10.

[50] *Id.* at 10.

[51] *Id.*

[52] *Id.* at 11 (citing *Dresser-Rand, Co. v. Virtual Automation, Inc.*, 361 F.3d 831, 838–39 (5th Cir. 2004)).

[53] *Id.*

[54] *Id.* at 10–11.

### III. Law and Analysis

**A.      Defendant's Motion for Judgment as a Matter of Law**

**1.      Standard of a Motion for Judgment as a Matter of Law**

In its motion, Defendant argues that it is entitled to judgment as a matter of law pursuant to

Federal Rule of Civil Procedure 50(b) because Plaintiffs' claims are prescribed. The Federal Rules

of Civil Procedure first address judgment as a matter of law in Rule 50(a)(1), which provides:

> If a party has been fully heard on an issue during a jury trial and the court finds that
> a reasonable jury would not have a legally sufficient evidentiary basis to find for the
> party on the issue, the court may:
>
> (A)      resolve the issue against the party; and
>
> (B)      grant a motion for judgment as a matter of law against the party on a claim
> or defense that, under the controlling law, can be maintained or defeated only
> with a favorable finding on that issue.

Motions under Rule 50(a)(1) may be renewed after trial pursuant to Rule 50(b), which states:

> If the court does not grant a motion for judgment as a matter of law made under Rule
> 50(a), the court is considered to have submitted the action to the jury subject to the
> court's later deciding the legal questions raised by the motion. No later than 28 days
> after the entry of judgment—or if the motion addresses a jury issue not decided by
> a verdict, no later than 28 days after the jury was discharged—the movant may file
> a renewed motion for judgment as a matter of law and may include an alternative or
> joint request for a new trial under Rule 59. In ruling on the renewed motion, the court
> may:
>
> (1)      allow judgment on the verdict, if the jury returned a verdict;
>
> (2)      order a new trial; or
>
> (3)      direct the entry of judgment as a matter of law.

Regarding technical compliance with the requirements of Rule 50(b), the Fifth Circuit has

emphasized that "the two basic purposes of this rule are 'to enable the trial court to re-examine the

10

question of evidentiary insufficiency as a matter of law if the jury returns a verdict contrary to the movant, and to alert the opposing party to the insufficiency before the case is submitted to the jury.'"[55]

A motion pursuant to Rule 50(b) "in an action tried by jury is a challenge to the legal sufficiency of the evidence supporting the jury's verdict."[56] Therefore, under Rule 50 (b), "judgment as a matter of law is proper after a party has been fully heard by the jury on a given issue, and there is no legally sufficient evidentiary basis for a reasonable jury to have found for that party with respect to that issue."[57] In evaluating a Rule 50(b) motion, a court "considers all of the evidence, drawing all reasonable inferences and resolving all credibility determinations in the light most favorable to the non-moving party."[58] Because all reasonable inferences and credibility determines should be resolved in favor of the non-movant, "judgment as a matter of law should not be granted unless the facts and inferences point so strongly and overwhelmingly in the movant's favor that reasonable jurors could not reach a contrary conclusion."[59]

## 2.    Prescription

Louisiana Civil Code article 3492 provides that "[d]elictual actions are subject to a liberative prescription of one year" and that "[t]his prescription commences to run from the day injury or

---

[55] *Scottish Heritable Trust, PLC v. Peat Marwick Main & Co.*, 81 F.3d 606, 610 (5th Cir. 1996).

[56] *Flowers v. S. Reg'l Physician Servs. Inc.*, 247 F.3d 229, 235 (5th Cir. 2001) (quoting *Ford v. Cimarron Ins. Co.,* 230 F.3d 828, 830 (5th Cir. 2000)).

[57] *Id.* (quoting *Ford,* 230 F.3d at 830) (internal quotations omitted).

[58]  *Id.* (quoting *Brown v. Bryan Cnty.*, 219 F.3d 450, 456 (5th Cir. 2000)) (internal quotation marks omitted).

[59] *Id.* (quoting *Omnitech Int'l, Inc. v. Clorox Co.*, 11 F.3d 1316, 1322 (5th Cir.1994)) (internal quotation marks omitted).

damage is sustained." Although Louisiana Civil Code article 3467 states that "[p]rescription runs against all persons unless exception is established by legislation," Louisiana jurisprudence contains certain exceptions to this rule.

First, the Louisiana Supreme Court recognizes the doctrine of *contra non valentum non currit praescriptio* (i.e., "*contra non valentum*") which "means that prescription does not run against a person who could not bring his own suit."[60] This doctrine "is used to soften the occasional harshness of prescriptive statutes."[61] Under Louisiana law, *contra non valentum* can be applied to prevent the running of prescription in four instances:

> (1) where there was some legal cause which prevented the courts or their officers from taking cognizance of or acting on the plaintiff's action; (2) where there was some condition coupled with the contract or connected with the proceedings which prevented the creditor from suing or acting; (3) where the debtor himself has done some act effectually to prevent the creditor from availing himself of his cause of action; and (4) where the cause of action is not known or reasonably knowable by the plaintiff, even though this ignorance is not induced by the defendant.[62]

The fourth category of *contra non valentem* is known as the "discovery rule."[63] Under the discovery rule, the prescriptive period begins to run "on the date the injured party discovers or should have discovered the facts upon which his cause of action is based."[64] As the Fifth Circuit explained in *Chevron USA, Inc. v. Aker Maritime, Inc.*,

> [c]onstructive knowledge or notice sufficient to commence the running of

---

[60] *Wells v. Zadeck*, 2011-1232 (La. 3/30/12), 89 So.3d 1145, 1150.

[61] *Id.*

[62] *Id.* (citing *Plaquemines Parish Comm'n Council v. Delta Dev. Co., Inc.*, 502 So. 2d 1034, 1056 (La. 1987)).

[63] *Id.*

[64] *Chevron USA, Inc. v. Aker Mar., Inc.*, 604 F.3d 888, 893 (5th Cir. 2010) (quoting *Griffin v. Kinberger*, 507 So. 2d 821, 823 (La. 1987)) (internal quotation marks omitted).

12

prescription requires more than a mere apprehension something might be wrong. But when a plaintiff suspects something is wrong, he must seek out those whom he believes may be responsible for the specific injury. When a plaintiff acts reasonably to discover the cause of a problem, the prescriptive period does not begin to run until he has a reasonable basis to pursue a claim against a specific defendant.[65]

Another exception to the running of one-year prescriptive period is known as the continuing tort doctrine. Under the continuing tort doctrine, "when the damaging conduct continues, prescription runs from the date of the last harmful act."[66] Said differently, "if both the tortious conduct and the damages continue, the tort may be deemed a 'continuing' one and prescription may not begin to run until the wrongful conduct ceases."[67] The Louisiana Supreme Court has explained that "for there to be a continuing tort there must be a continuing duty owed to the plaintiff and a continuing breach of that duty by the defendant."[68] Louisiana has "reject[ed] the contention that the continuing breach of duty could consist of defendant's failure to remedy the harm caused by the initial tortious conduct," because "the breach of the duty to right a wrong and make the plaintiff whole simply cannot be a continuing wrong which suspends the running of prescription, as that is the purpose of any lawsuit and the obligation of every tortfeasor."[69] "When a defendant's damage-causing act is completed, the existence of continuing damages to a plaintiff, even progressively worsening damages does not present successive causes of action accruing because of

---

[65] *Id.* at 894 (internal quotation marks, citations, and alternations omitted).

[66] *S. Centr. Bell Tel. Co. v. Texaco, Inc.*, 418 So.2d 531, 532 (La. 1982).

[67] Frank L. Maraist, et al., *Louisiana Tort Law* §10-4.

[68] *In re Medical Review Panel for Claim of Moses*, 2000-2643 (La. 5/25/01), 788 So. 2d 1173, 1180 (quoting *Crump v. River Auth.*, 98-2326 (La. 6/29/99), 737 So. 2d, 720, 728)).

[69] *Id.* (citing *Crump*, 737 So. 2d at 729).

a continuing tort."[70] The continuing tort doctrine is primarily applicable in the property law context of a ongoing trespass; outside of this context, Louisiana courts have relied on the doctrine in cases of ongoing exposure resulting in an occupational disease and ongoing intentional infliction of emotional distress.[71]

**3.      Analysis**

In support of its Motion for Judgment as a Matter of Law, Defendant appears to make two distinct arguments regarding prescription. First, Defendant contends that prescription is inherently question of law that a judge must decide. Second, Defendant asserts that in this case, there was insufficient evidence to support the jury's finding that Robert Cook did not have actual or constructive knowledge of facts indicating that he was a victim of negligence more than one year before he filed suit on January 30, 2013.

**a.      Whether Prescription Was a Question for the Jury Rather Than the Judge in This Case**

As a preliminary matter, the Court notes that Defendant argues for the first time in its pending post-trial motion that *contra non valentem* is an issue of law. Defendant did not identify whether *contra non valentem* was an issue of law for the judge or of fact for the jury in the parties' joint Pre-Trial Order,[72] nor did Defendant object to either the jury instructions on *contra non valentem* or the verdict form question on *contra non valentem*. Accordingly, Defendant may have waived this argument. Nevertheless, the Court will address the merits of Defendant's argument.

---

[70] *Id.* at 1183.

[71] *See id.*

[72] Rec. Doc. 55.

According to Defendant, "Louisiana Courts have long held that issues of prescription are questions of law to be determined by a judge."[73] In making such an assertion, Defendant appears to import Louisiana procedural law to a federal case; such an attempt runs afoul of *Erie Railroad v. Tompkins*, under which "[f]ederal courts apply state substantive law when adjudicating diversity-jurisdiction claims, but in doing so apply federal procedural law to the proceedings.'"[74]

Louisiana Code of Civil Procedure article 927(A)(1) provides that prescription is a peremptory exception; in Louisiana, such exceptions are generally determined by a judge prior to trial.[75] This state procedural rule, however, does not dictate that the issue of prescription must be decided by a judge in federal court. As the Louisiana Supreme Court observed in *Babineaux v. Pernie-Bailey Drilling Co.*, in federal practice "judge functions are far more limited in pre-trial proceedings in jury cases than in our state courts."[76] The Fifth Circuit, in *Nunez v. Superior Oil Co.*, specifically instructed that "although substantive issues are governed by state law pursuant to *Erie*, federal law governs the allocation of issues between judge and jury."[77] According to *Nunez*, "'[i]t cannot be gainsaid that there is a strong federal policy against allowing state rules to disrupt the

---

[73] Rec. Doc. 87-1 at p. 3.

[74] *Exxon Corp. v. Burglin*, 42 F.3d 948, 950 (5th Cir. 1995) (citing *Erie R.R. v. Tompkins*, 304 U.S. 64 (1938)).

[75] *See* La. Code Civ. P. art. 929(A) (". . . the peremptory exception when pleaded before or in the answer shall be tried and decided in advance of the trial of the case."); La. Code Civ. P. art. 929(B) ("If the peremptory exception has been filed after the answer, but at or prior to the trial of the case, it shall be tried and disposed of either in advance of or on the trial of the case. If the peremptory exception has been pleaded after the trial of the case, the court may rule thereon at any time unless the party against whom it has been pleaded desires and is entitled to introduce evidence thereon. In the latter event, the peremptory exception shall be tried specially.").

[76] *Babineaux v. Pernie-Bailey Drilling Co.*, 262 So.2d 328, 335 (La. 1972) (but also noting that federal judges do address certain issues prior to trial, such a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6)).

[77] *Nunez v. Superior Oil Co.*, 572 F.2d 1119, 1125 (5th Cir. 1978).

judge-jury relationship in federal courts.' Hence, where federal rules would entitle litigants to a jury determination of a particular issue, the court will not yield to a state practice to the contrary."[78]

*Nunez* explains that in determining whether a matter is for the judge or the jury to decide, "[t]he categories of 'questions of law' and 'questions of fact' have been the traditional touchstones by which federal courts have purported to allocate decision-making between judge and jury."[79] Generally, questions of reasonableness are questions of fact for the jury.[80] In *Nunez*, the Fifth Circuit addressed the issue of whether the trial court was correct to grant summary judgment on the question of whether a party's delay in making payments was justified.[81] The Fifth Circuit reversed the trial court's grant of summary judgment because "whether the delay in payments was 'justified' . . . depends in large measure upon whether [the defendant] acted reasonably under the circumstances."[82] That itself is a question of fact "differing perhaps only in degree from such other general standards as negligence, foreseeability, reasonableness or just cause . . . . Hence, it involves a determination that either party would be entitled to have submitted to a jury, if he is otherwise entitled to a jury trial."[83] Thus, in *Nunez*, because the issue of "justifiability"—which "depends upon whether [the defendant] acted reasonably under the circumstances"—was a question of fact to be submitted to the jury, and because the evidence was not so overwhelming that reasonable minds could not disagree, the Fifth Circuit held the trial court's granting of summary judgment was

---

[78] *Id.* (quoting *Byrd v. Blue Ridge Rural Electric Coop.*, 356 U.S. 525, 538 (1958)).

[79] *Id.*

[80] *Id.*

[81] *Id.* at 1123.

[82] *Id.* at 1126.

[83] *Id.* at 1127.

improper.[84] Significantly, the Fifth Circuit specifically noted that "if reasonable persons can draw conflicting inferences from otherwise undisputed facts, the collective wisdom of the jury ought be relied upon."[85]

Similarly, in cases specifically addressing *contra non valentem*, the Fifth Circuit has found the issue to be a question of fact. In *Terrebonne Parish School Board v. Mobile Oil Corp.*, the Fifth Circuit, while affirming the district court's granting of summary judgment, acknowledged that *contra non valentem* was a question of fact.[86] In *Terrebonne*, summary judgment was properly granted  because the plaintiff failed "to adduce evidence sufficient to raise a material issue of fact" regarding *contra non valentem*.[87] Accordingly, courts in the Eastern District of Louisiana have repeatedly denied motions for summary judgment on *contra non valentem* where disputed facts made resolution of the issue properly one for the jury.[88]

The cases cited to by Defendant for the contrary proposition that *contra non valentem* is considered a question of law in federal courts do not support Defendant's argument. Neither *McGee* nor *Bourdais*, cited by Defendant, mention *contra non valentem*. Moreover, the Court notes even if they did stand for the proposition Defendant asserts—and the Court maintains that they do not—neither case is binding authority. *McGee* is an unpublished Fifth Circuit case that is not to be

---

[84]  *Id.* at 1126–27.

[85]  *Id.* at 1126.

[86]  *Terrebonne Parish Sch. Bd. v. Mobil Oil Corp.*, 310 F.3d 870 (5th Cir. 2002)

[87]  *Id.* at 886.

[88]  *See, e.g.*, *Resolution Trust Corp. v. Aycock*, CIV. A. 92-761, 1993 WL 557683 (E.D. La. Jan. 5, 1994) (Clement, J.) (noting that "the facts necessary to determine whether [*contra non valentem*] is applicable are disputed and must be resolved at trial"); *Resolution Trust Corp. v. Int'l Ins. Co.*, 770 F. Supp. 300, 306 (E.D. La. 1991) (Carr, J.) (rejecting the defendants' argument that *contra non valentem* cannot possibly apply).

cited as precedent in other matters pursuant to Fifth Circuit Rules 28.7, 47.5.3, and 47.5.4, and *Bourdais* is an opinion from another Eastern District of Louisiana court. *R.J. Reynolds*, the final federal case cited by Defendant—contrary to Defendant's interpretation—determined that *contra non valentem* is a question of fact.[89] In *R.J. Reynolds*, the Fifth Circuit affirmed the district court's denial of summary judgment on the question of *contra non valentem* because the application of *contra non valentem* in that case "raise[d] disputed questions of fact" that would "make it improper for the Court to dismiss the case on motion for summary judgment."[90] Thus, contrary to Defendant's assertion, the Fifth Circuit in *R.J. Reynolds* indicated that *contra non valentum* is generally a question of fact that may go to the jury for resolution.

Next, the Court addresses Defendant's argument that "[b]ecause the facts weighed by this Court when determining that no continuing tort existed are the same facts your Honor must analyze when determining whether the doctrine of contra non valentem was applicable . . . the Court, not the jury, should have also decided whether Plaintiffs' had actual or constructive knowledge of a potential claim against Defendant."[91] This argument misconstrues the Court's reasons for granting judgment as a matter of law on the continuing tort doctrine. In deciding the question of a continuing tort in this case, the Court did not determine that the issue of prescription is always a question of law. Rather, the Court found that the evidence regarding whether there was a continuing tort was insufficient, as a matter of law, to find for Plaintiffs on this issue. In its ruling, the Court noted that in *In re Medical Review Panel for Claims of Moses*, the Louisiana Supreme Court explained that

---

[89] *R. J. Reynolds*, 314 F.2d at 788.

[90] *Id.*

[91] Rec. Doc. 87-1 at 4.

"[w]hen a defendant's damage-causing act is completed, the existence of continuing damages to a plaintiff, even progressively worsening damages, does not present successive causes of action accruing because of a continuing tort."[92] As Plaintiffs had offered no evidence that Defendant's alleged damage causing act—negligent installation of the air compressor-painting system—was not completed as of August 2000, the Court found that, as a matter of law, Plaintiffs' had not presented a claim of continuing tort because a reasonable jury would not have a legally sufficient evidentiary basis to find for Plaintiffs on this issue.[93]

Significantly, *contra non valentem*, hinges on the reasonableness of the plaintiff's action or inaction in uncovering knowledge of a tort while the existence of a continuing tort involves no such determination. Louisiana courts have acknowledged this distinction, specifically noting "the theories of contra non [valentem], or the discovery rule, and continuing tort are distinct and separate" because, unlike *contra non valentem*, "[t]he continuous tort doctrine has no element of knowledge by the plaintiff to consider in order to decide when prescription will begin to run."[94]

The Court was not free to decide the issue of *contra non valentem* as a matter of law because there was a disputed issue of material fact as to whether the alleged tort was reasonably knowable by the Plaintiffs under the circumstances, considering Cook's education, intelligence and the nature of defendant's conduct.[95] The Court specifically noted that a question of fact exists "[w]here uncertainty arises either from a conflict of testimony or because the facts being undisputed fair-

---

[92] *In re Med. Review Panel*, 788 So. 2d at 1183.

[93] *Id.*

[94] *Coulon v. Witco Corp.*, 03-208 (La. App. 5 Cir. 5/28/03), 848 So.2d 135, 138.

[95] *Wells*, 89 So. 3d at 1151, 1155 n.1.

minded men may honestly draw different conclusions from them."[96] Determining whether Cook acted reasonably to discover the source of the problem required drawing conclusions from the evidence, and fair-minded men could reach different results. Accordingly, Cook's reasonableness was an issue of fact, and it would not have been proper for the Court to have decided *contra non valentem*.

As discussed above, federal law governs whether an issue is decided by a judge or a jury, and *Nunez* instructs that under federal law, "[t]he categories of 'questions of law' and 'questions of fact' have been the traditional touchstones by which federal courts have purported to allocate decision-making between judge and jury."[97] In this case, Cook's reasonableness presented a disputed question of fact for the jury to determine. Accordingly, Defendant's motion for judgment as a matter of law on this basis is not warranted.

> **b.    Whether There Is Sufficient Evidence to Support the Jury's Finding That Plaintiffs' Claims Are Not Prescribed**

Next, Defendant asserts that "Plaintiffs failed to establish a legally sufficient evidentiary basis that their claim was not barred by prescription."[98] As a preliminary matter, the Court addresses who had the burden of proof on this issue. According to Louisiana Supreme Court's decision in *Taranto v. Louisiana Citizens Property Insurance Corp.*, generally, the defendant bears the burden of proving prescription.[99] "However, if the petition is prescribed on its face, then the burden shifts

---

[96] *Nunez*, 572 F.2d at 1126 (quoting *Best v. Dist. of Columbia*, 291 U.S. 411, 415 (1934)) (internal quotation marks omitted).

[97] *Id.* at 1125.

[98] Rec. Doc. 87-1 at p. 10.

[99] *Taranto v. La. Citizens Prop. Ins. Co.*, 2010-0105 (La. 3/15/11), 62 So. 3d 721, 726.

to the Plaintiff to negate the presumption by establishing a suspension or interruption."[100] In this

case, Plaintiffs filed their complaint on January 30, 2013, which would make all claims prior to

January 30, 2012 facially subject to prescription.[101] Most of the conduct alleged in the complaint

took place prior to January 30, 2012. For example, Plaintiffs asserted that "[i]n August or September

of 2000, COOK purchased from INGERSOLL, and INGERSOLL installed a compressor, air

conditioning unit and piping to be used with the newly installed paint booth."[102] Plaintiffs further

claimed that "INGERSOLL performed service calls and inspections to the compressed air dryer

system in 2001, 2005, 2006, 2009, and December of 2010,"[103] and stated that "[o]n or about

December 1, 2011, INGERSOLL removed its refrigerant dryer and installed the new Dryaire

Desiccant System for use with COOK's paint booth."[104] Finally, Plaintiff sought damages incurred

prior to January 30, 2012.[105] Accordingly, the burden was on Plaintiffs to prove by a preponderance

of evidence that their claims had not prescribed.

As Plaintiffs point out in their brief, at trial Robert Cook testified that he had no idea what

the source of the problem with the air compressor-painting system was until he was told by outside

vendors in 2012.[106] Cook stated in his testimony that in December 2011, after he purchased a new

---

[100] *Nunez*, 572 F.2d at 1125.

[101] *See* Rec. Doc. 1.

[102] *Id.* at p. 2.

[103] *Id.*

[104] *Id.* at p. 3.

[105] *Id.* at pp. 4–5 (alleging that Plaintiffs "sustained damages and losses from 2000 to date and beyond, including cost of materials and labor, loss of productive use of the paint booth, loss of customer good will, loss of reputation and expenses related to the revision and/or repair of the system").

[106] Rec. Doc. 89 at 8–9.

Ingersoll Rand dryer for the air compressor-painting system, he complained to Jorge Santana, the vendor of that dryer. According to Cook's testimony, Santana visited Cook's facility and immediately identified the problem as Ingersoll Rand's earlier failure to have installed drip pipes. Following Santana's visit, Jeffrey McCants installed drip pipes in March of 2012, which immediately corrected the problems with the air compressor-painting system that Cook had been experiencing.

While Cook acknowledged that he realized something was wrong with the air compressor-painting system soon after its installation in 2000, the doctrine of *contra non valentem* provides that if "a plaintiff acts reasonably to discover the cause of a problem,  the prescriptive period does not begin to run until he has a reasonable basis to pursue a claim against a *specific* defendant."[107]  As noted earlier, Louisiana courts have recognized *contra non valentem* as an exception to prescription "where the cause of action is not known or *reasonably* knowable by the plaintiff, even though his ignorance is not induced by the defendants."[108] In determining whether a cause of action is reasonably knowable, a finder of fact is to "look[ ] to the record for evidence of facts within plaintiff's knowledge and then examin[e] the reasonableness of plaintiff's inaction in light of those facts, considering plaintiff's education, intelligence and the nature of defendant's conduct."[109]

The evidence is sufficient for a reasonable jury to find that Plaintiffs' inaction was reasonable in light of the facts of this case, including Defendant's conduct. The evidence presented at trial shows that Cook had annual inspections of the unit performed by Defendant, repeatedly

---

[107]  *Chevron USA, Inc.*, 604 F.3d at 894 (internal alterations, citations and quotation marks omitted) (emphasis added).

[108]   *Wells,* 89 So. 3d. at 1150.

[109]  *Id.* at 1151.

complained to Defendant about the quality of the paint jobs, resealed and re-painted the painting booth, had filters replaced at Defendant's suggestion, had new equipment installed at Defendant's suggestion, installed a water pump, changed paints, and, finally, consulted Santana and McCants to help identify the source of the problem. Cook testified that throughout this period, Defendant's agents assured Cook that there was no problem with the system. Moreover, Cook testified that until he consulted Santana and McCants, he did not know that Defendant was at fault or, indeed, even that he was the victim of a tort by anyone. The jury was free to believe Cook's testimony and also further free to determine from the evidence that Cook took reasonable steps to discover the cause of the air compressor-painting system's problem and that Cook had no reasonable basis to bring a claim against Defendant until 2012, at which point the prescriptive period would have begun to run.

Defendant fails to cite to facts in the record that would indicate that a rational jury could only find for Defendant[110] on *contra non valentem*. The evidence Defendant points to indicates, at most, that Plaintiffs were aware that something was amiss with the air compressor-painting system; however, as noted above, mere knowledge of injury is insufficient to start the prescriptive period.[111] "[T]he prescriptive period does not begin to run until [the plaintiff] has a reasonable basis to pursue a claim against a *specific* defendant."[112]

While Defendant repeatedly claims in its memorandum that the evidence shows Cook had actual knowledge that he had a cause of action,[113] Defendant fails to appreciate that the evidence

---

[110] *See Pineda v. United Parcel Serv., Inc.*, 360 F.3d 483, 486 (5th Cir. 2004) ("A post-judgment motion for judgment as a matter of law should only be granted when the facts and inferences point so strongly in favor of the movant that a rational jury could not reach a contrary verdict.") (international citations and quotation marks omitted).

[111] *Chevron*, 604 F.3d at 894.

[112] *Id.* (emphasis added).

[113] *See* Rec. Doc. 87-1 at pp. 6–10.

does not show that Cook knew against whom he had that cause of action nor does Defendant ever assert that Cook had actual knowledge that Defendant was the party responsible for his injury before 2012. Moreover, Cook denied in his testimony that he knew Defendant was at fault before 2012 or that he was the victim of a tort, and the jury was free to credit Cook's testimony. Thus, the Court rejects Defendant's argument that the evidence was legally insufficient to support the jury's finding on *contra non valentem*. Accordingly, the Court denies Defendant's motion for judgment as a matter of law.

**B.      Defendant's Motion for a New Trial**

Pursuant to Federal Rule of Civil Procedure 50(b), a party filing a renewed motion for judgement as a matter of law "may include an alternative or joint request for a new trial under Rule 59." In its motion, Defendant alternatively requests that the Court grant a new trial, arguing that "the verdict  entered in favor of the Plaintiffs is clearly against the weight of the evidence on the issue of prescription" and in its award of $225,000 in damages.[114]

---

[114] Rec. Doc. 87-1 at p. 11.

### 1.      Standard on a Motion for a New Trial

Federal Rule of Civil Procedure 59(a)(1)(A) states that a district court "may, on motion, grant a new trial on all or some of the issues . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." The decision to grant or deny a motion for a new trial is within the sound discretion of the trial court.[115] Although Rule 59(a) does not enumerate grounds for a new trial, the Fifth Circuit has explained that "[a] new trial may be granted, for example, if the district court finds the verdict is against the weight of the evidence, the damages awarded are excessive, the trial was unfair, or prejudicial error was committed in its course."[116]

Although neither party addresses whether state or federal law provides the standard for reviewing the sufficiency of the evidence on a Rule 59 motion, the Court notes that this area of law has recently evolved. In the 1989 case *Jones v. Wal-Mart Stores, Inc.*, the Fifth Circuit concluded that in a diversity case, "state law determines the type of evidence that must be produced to support a verdict but 'the sufficiency or insufficiency of the evidence in relation to the verdict is indisputably governed by a federal standard.'"[117] However, in the 2008 case *Foradori v. Harris*,[118] the Fifth Circuit appeared to change course in light of the Supreme Court's 1996 decision in *Gasperini v. Center for Humanities, Inc.*[119] In *Foradori*, the Fifth Circuit explained that "[t]he Supreme Court in

---

[115]  *Pryor v. Trane Co.*, 138 F.3d 1024, 1016 (5th Cir. 1998).

[116]  *Smith v. Transworld Drilling Co.*, 773 F.2d 610, 613 (5th Cir. 1985); *see also Weckesser v. Chicago Bridge and Iron, L.G.*, 447 F. App'x 526, 529 (5th Cir. 2011) (quoting *Smith*).

[117]  *Jones v. Wal-Mart Stores, Inc.*, 870 F.2d 982, 986 (5th Cir. 1989) (quoting *McCandless v. Beech Aircraft Corp.*, 779 F.2d 200, 223 (5th Cir. 1985)).

[118]  523 F.3d 477 (5th Cir. 2008).

[119]  518 U.S. 415 (1996).

*Gasperini* held that, in an action based on state law but tried in federal court by reason of diversity of citizenship, a court must apply a new trial or remittitur standard according to the state's law controlling jury awards for excessiveness or inadequacy."[120] Although *Foradori* did not expressly overrule *Jones*, in its 2012 decision in *Fair v. Allen,*[121] the Fifth Circuit clarified that *Jones* is no longer good law. In *Fair*, the plaintiffs in a diversity case appealed the district court's denial of their motion for additur or a new trial, asserting that the district court had incorrectly applied the *Jones* standard.[122] The Fifth Circuit held that under *Foradori*, the district court should have applied the Louisiana state-law standard:

> Plaintiffs moved for additur and, failing that, new trial. Although both *Jones* and *Foradori* could be applied to this situation, *Foradori*, coming after an intervening Supreme Court decision, controls. Therefore, the district court erred in applying the federal standard; Louisiana law applies.[123]

Accordingly, in light of the Fifth Circuit's instruction in *Foradori* and *Fair*, the Court will apply Louisiana law to Defendant's challenge to the adequacy of the evidence in its Rule 59 motion.

Under Louisiana law, "[a] new trial shall be granted . . . when the verdict or judgment appears clearly contrary to the law and the evidence."[124] "The trial court's discretion in ruling on a motion for new trial is great,"[125] and "the court can evaluate the evidence, draw it's [sic] own

---

[120] *Foradori*, 523 F.3d at 497 (internal citations omitted).

[121] 669 F.3d 601 (5th Cir. 2012).

[122] *See id.* at 604.

[123] *Id.*

[124] La. Code Civ. P. art. 1972(1).

[125] *Davis v. Wal-Mart Sores, Inc.*, 2000-0445 (La. 11/28/00), 774 So. 2d 84, 93.

inferences and conclusions, and determine whether the jury 'erred in giving too much credence to an unreliable witness.'"[126] However, the Louisiana Supreme Court has cautioned:

> The fact that a determination on a motion for new trial involves judicial discretion, however, does not imply that the trial court can freely interfere with any verdict with which it disagrees. The discretionary power to grant a new trial must be exercised with considerable caution. Fact finding is the province of the jury, and the trial court must not overstep its duty in overseeing the administration of justice and unnecessarily usurp the jury's responsibility. A motion for new trial solely on the basis of being contrary to the evidence is directed squarely at the accuracy of the jury's factual determinations and must be viewed in that light. Thus, the jury's verdict should not be set aside if it is supportable by any fair interpretation of the evidence.[127]

Said differently, "[t]he scales are clearly tilted in favor of the survival of the jury's verdict."[128]

### 2.      Analysis

#### a.      Prescription

In moving for a new trial, Defendant argues that all of the evidence offered by Plaintiffs, including the testimony of Robert Cook, indicates that Plaintiffs actually discovered the facts upon which their cause of action is based in October 2000, over twelve years before they brought suit.[129] However, as noted above, "the prescriptive period does not begin to run until [the plaintiff] has a reasonable basis to pursue a claim against a *specific* defendant."[130] In this case, the jury's verdict on the issue of *contra non valentum* is supportable by a fair interpretation of the evidence. Defendant

---

[126] *Fair*, 669 F.3d at 605 (quoting *Joseph v. Broussard Rice Mill, Inc.*, 2000-0628 (La. 10/30/00), 772 So. 2d 94, 104)).

[127] *Davis*, 774 So. 2d at 93 (quoting *Gibson v. Bossier City Gen. Hosp.*, 594 So. 2d 1332, 1336 (La. App. 2 Cir. 1991)).

[128] *Id.*

[129] Rec. Doc. 87-1 at 6.

[130] *Chevron USA, Inc.*, 604 F.3d at 894.

points to no evidence indicating that Plaintiffs had reason to know prior to 2012 that Defendant was the cause of the air compressor-painting system's defects. On the other hand, Plaintiffs submitted the testimony of Cook, who specifically stated that he did not learn until 2012 that Defendant had incorrectly installed the air compressor-painting system, which was the cause of the system's poor performance. Considering that "[t]he scales are clearly tilted in favor of the survival of the jury's verdict"[131] as well as the evidence presented at trial and the applicable law on prescription, the Court denies Defendant's motion for a new trial on this basis.

####     b.     Damages Awarded

Defendant also seeks a new trial on the ground that Plaintiffs offered no evidence with respect to the damages awarded except for "brief, generalized summaries prepared with the aid of their attorney, years after such damages supposedly occurred."[132] According to Defendant, "[t]his sort of evidence is insufficient to support the jury's determination of damages in this matter."[133] Again, the Court notes that "the jury's verdict should not be set aside if it is supportable by any fair interpretation of the evidence."[134] Here, Plaintiffs presented evidence on the amount of damages in the form of summaries of hundreds of files. On January 8, 2014, Defendant filed a motion in limine, seeking to exclude these summaries pursuant to Federal Rule of Evidence 1006. On January 10, 2014, Plaintiffs filed an opposition. In a status conference held on January on 10, 2014, the Court addressed Defendant's objection to the summaries, specifically addressing whether Plaintiff's

---

[131] *Davis*, 774 So. 2d at 93.

[132] Rec. Doc. 87 at 12.

[133] *Id.*

[134] *Davis*, 774 So. 2d at 93 (quoting *Gibson*, 594 So. 2d at 1336).

proposed summary exhibit conformed to Federal Rule of Evidence 1006. As noted in the Court's minute entry, "Defendant informed the Court that the exhibit addresses damages from 2006 forward, and that for these dates, Defendant does not dispute the accuracy of the exhibit. Defendant further stated that it had received the proposed exhibit, and had adequate time to review it. Defendant told the Court that it withdrew any objection it had to the exhibit."[135]

Moreover, in its current motion, Defendant merely asserts that the general nature of the evidence was insufficient to support the jury's finding on damages; Defendant fails to elaborate on this point. The summaries were used to demonstrate what the calculated damages were, and Cook testified as to the basis of these calculations. Moreover, the summaries point to a specific dollar figure for the damages. While the jury was free to decide that the summaries or underlying documents were inaccurate, the jury was also free to believe Cook and conclude that the summaries accurately reflected the damages incurred by Plaintiffs as a result of Defendant's negligence.

Cook also testified that his automotive repair shop had to re-paint numerous cars as a result of complaints from customers about the paint jobs, and Cook testified as to business that was lost from 2001 to 2004. These paints jobs cost the automotive repair shop hundreds of thousands of dollars in materials and labor, according to Cook, as did the lost sales. Examining the record, the Court concludes that the jury's finding on damages are supportable by a fair interpretation of the evidence. Accordingly, the Court denies Defendant's motion for a new trial on this ground.

---

[135]  Rec. Doc. 70 at 1.

### IV. Conclusion

For the above reasons, the Court finds that the question of *contra non valentem* was properly given to the jury. Moreover, the Court finds that the evidence was sufficient to support the jury's finding on this issue. Thus, the judgment as a matter of law is not appropriate in this instance. Further, the jury's verdict with respect to prescription and with respect to damages is supportable by a fair interpretation of the evidence, and thus, a new trial is not warranted. Accordingly,

**IT IS HEREBY ORDERED** that Defendant Ingersoll-Rand's "Renewed Motion for Judgment as a Matter of Law, or in the Alternative, Motion for a New Trial" is **DENIED.**

**NEW ORLEANS, LOUISIANA**, this <u>15th</u> day of August, 2014.

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**